IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

KATHRYNE DELANEY,                                                 Civ. No. 09-807-AC

                        Plaintiff,                                        OPINION AND
                                                                              ORDER

            v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

_____

ACOSTA, Magistrate Judge:

        Claimant Kathryne Delaney ("Claimant") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA"). *See*

42 U.S.C. §§ 1381-83f (2010).  This court has jurisdiction to review the Commissioner's decision

pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court reverses the Commissioner's decision and remands the matter for an immediate award of benefits.

*Procedural History*

Claimant filed for SSI benefits on June 15, 2006, alleging a disability onset date of October 12, 2004. The claim was denied initially and on reconsideration. On September 19, 2008, a hearing was held before an Administrative Law Judge, Charles S. Evans ("ALJ Evans"). The case was subsequently transferred and a supplemental hearing was held before a different ALJ, Donna Montano ("ALJ Montano" or "the ALJ") who issued a decision on January 22, 2009, finding Claimant not disabled. Claimant requested review of this decision on March 12, 2009. The Appeals Council denied this request making ALJ Montano's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on July 14, 2009.

*Factual Background*

I.    Record Evidence

Claimant's self-reports reveal the following. Claimant's activities have been dramatically restricted over the last several years. She states that she is constantly in pain and is easily fatigued. Some days she performs light housework, shops for small amounts of groceries, and spends time talking or visiting with friends and family, watching television, caring for her cat, and reading or working on the computer. She is able to perform basic tasks of personal care. She often has to take breaks in the middle of an activity to get her energy back up. She does arts and crafts approximately twice a week for one hour, and reads or uses the computer for approximately one hour every other day. She cannot drive long distances. Claimant uses medical marijuana each night before going to sleep and wakes two or three times each night in pain. She often takes a nap in the afternoon to cope

OPINION AND ORDER                     2                              {KPR}

with her fatigue.  (Tr. 152-66.)

Claimant's father, Gordon L. Brehm ("Brehm"), with whom Claimant currently lives, filled out a third-party Function Report.  (Tr. 167-74.)  He wrote that Claimant is constantly in pain, to some degree, and is often awoken during sleep by the pain which she describes as "[t]he inside of her [] burning up."  (Tr. 168.)  Brehm reported that she spends thirty minutes a day preparing food and thirty to forty-five minutes doing light housework.  He wrote that Claimant goes shopping two or three times a week for approximately thirty to sixty minutes at a time.  He reported that she engages in arts and crafts a few times a week for one hour, and spends one to two hours on the computer approximately four times per week.  He estimated that Claimant could walk approximately one block before taking a rest and would need five minutes rest prior to resuming walking.

A hepatitis C test performed by Quest Diagnostic shows Claimant's viral levels well above the normal range.  (Tr. 203-04.)  An abdominal ultrasound revealed "[n]ormal abdominal sonography."  (Tr. 332.)

Dr. Saulson, a physician at Eye Health Northwest, evaluated Claimant's eyes and concluded that she did not currently exhibit an "ocular pathology" and that the difficulties he did diagnose could be corrected "with good acuity."  (Tr. 206.)

Dr. Howard Gandler, M.D. ("Dr. Gandler"), a rheumatologist, evaluated Claimant on May 9, 2006.  He observed that although her grip strength was "moderately good," gripping with her right hand caused shooting pain to her elbow.  (Tr. 239.)  He performed a fibromyalgia exam which revealed tenderness in twelve of eighteen fibromyalgia points, which "meets tender point criteria" sufficient to justify a diagnosis of fibromyalgia. (Tr. 239.) Furthermore, he stated that "fibromyalgia commonly arises in the setting of injury/injuries to the neck, back and shoulders and it also

commonly occurs in patients with chronic hepatitis C." (Tr. 239.) Dr. Gandler noted that Claimant had not been tested for chronic hepatitis, but that "most people with hepatitis C develop chronic hepatits." (Tr. 239.) Dr. Gandler observed that Claimant "has a mechanical component to her pains as evidenced by her 'popping ribs' and dramatic improvement in related pains with chiropractic manipulation." (Tr. 239.) He also recognized that, although her significant right shoulder pain responded well to a rotator cuff surgery, her pain was again worsening. (Tr. 239.) At the time of this evaluation, Claimant did not want to pursue treatment for fibromyalgia. He recommended that she be evaluated by an orthopedist. (Tr. 220.)

On June 15, 2006, Dr. Eric Dover, M.D. ("Dr. Dover") wrote a note on behalf of Claimant stating: "Ms. Kathryne Delaney is a patient of mine. She has had Hep C for 30 years. She has fibromyalgia [and] chronic [right] shoulder pain. She is unable to work at this time in any position. I do not see her medical situation ever improving." (Tr. 234.) On June 19, 2006, Dr. Daniel E. Beeson ("Dr. Beeson"), Claimant's chiropractor of approximately twenty years, wrote that Claimant had been under his care for twenty years and suffered from hepatits C and fibromyalgia and had responded well to chiropractic care. (Tr. 235.) On October 9, 2006, Dr. Dover wrote: "Ms. Delaney is unable to do any work at this time because of fatigue and pain associated with her medical problems. This situation is not going to improve in the future, in fact it is worsening. This is resulting in depression for the patient." (Tr. 331.) In September 2008, Dr. Dover filled out a "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment" in which he characterized Claimant as incapable of performing light or sedentary work on a regular and continuing basis. (Tr. 420.) He indicated that "even if [the] patient had the freedom to alternate sitting and standing during the work day," she would be unable to perform light or

sedentary work. He also attested to his belief that Claimant was not malingering. Dr. Dover classified Claimant as limited with moderate severity in her "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." (Tr. 422.) He characterized her as severely limited in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 422.)

On September 8, 2008, Dr. Dover summarized Claimant's condition, noting that she is a long-term sufferer of both hepatitis C and fibromyalgia. He wrote:

> Ms. Delaney complains of severe fatigue and muscular pain. She is unable to perform any sustained activity. She must rest continuously. Recently she has experienced heart palpitations with minor physical activity. She treats her Myofascial Pain Syndrome/Fibromyalgia with pain medication and a muscle relaxer. She also sees a naturopath. Treatment keeps her just functional enough to care for herself. Her prognosis is poor considering the chronicity of her diseases. She needs to have a liver biopsy performed to stage her liver diseases secondary to Hepatitis C.
>
> Ms. Delaney would not presently nor in the future be employable regarding her medical problems.

(Tr. 423.)

A "Physical Residual Functional Capacity Assessment" completed by Dr. Linda Jensen states that Claimant is capable of occasionally lifting twenty pounds, frequently lifting ten pounds, standing and/or walking about six hours in an eight hour workday, sitting for about six hours in an eight hour workday, and unlimited pushing and pulling, subject to the weight restrictions listed above. (Tr. 304.) The form also assessed Claimant's postural limitations, indicating limited abilities to climb ramps and stairs, and to stoop. Claimant was assessed as completely limited from climbing ropes and scaffolds. (Tr. 305.)

Dr. Beeson wrote that Claimant wished to return to the workforce and, although she was limited in her ability to lift overhead, "certainly c[ould] work at waist height and would have to watch any repetitious lifting with her right arm overhead." (Tr. 322.) Dr. Beeson wrote that Claimant should be limited to a thirty-two hour work week.

On October 21, 2008, Claimant underwent a Psychodiagnostic Evaluation by Dr. John Adler ("Dr. Adler"), a Licensed Psychologist. Dr. Adler stated that the objective evidence as to mental impairments was unclear, but opined that she may suffer from some depression, though she "appeared more angry than depressed[.]" (Tr. 428.) Claimant was able to perform almost all of the mental tasks within normal ranges and, though she demonstrated some difficulty with one specific tasks, Dr. Adler did not consider it representative of her mental capacity. Dr. Adler wrote: "However, her ability to cope with stress and interact appropriately with others (ex: when challenged, and sometimes even before that) did show some problems, as she was fairly defensive and hostile most of the interview and made it clear that she was upset with DDS and didn't want to participate[.]" (Tr. 428.) Even so, Claimant ultimately did participate and provided the necessary information. Dr. Adler found "few signs of impairments due to mental factors[,]" though he was concerned that Claimant may have been abusing marijuana. (Tr. 428.)

Dr. Adler completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" form and characterized Claimant as follows: mildly limited in ability understand and remember complex instructions and carry out complex instructions; mildly limited in ability to interact appropriately with the public and interact appropriately with coworkers; moderately limited in ability to interact appropriately with supervisors. (Tr. 431.)

After the administrative hearing, but before the request for reconsideration by the Appeals

Council, Dr. Gandler wrote a letter to Claimant's then counsel, Zachary Zabinsky. In the letter, Dr. Gandler characterized Claimant as profoundly limited by fibromyalgia. He stated that Claimant must constantly shift her position because of pain, can sit for a maximum of ninety minutes, can stand for a maximum of an hour while leaning on a grocery cart, but may stand unsupported for only ten to fifteen minutes. She has great difficulty lifting and carrying heavy objects and has modified her daily tasks to compensate for this. Claimant experiences a lot of pain in her hands which makes using a keyboard and working on her arts and crafts difficult. She can read for only twenty minutes due to difficulties with her eyes. Dr. Gandler wrote:

> There is no activity, let alone job, that Ms. Delaney could perform on a real work schedule. Even allowing the unlikely possibility that she could work from home and be completely freed from the time, effort and stresses of getting properly attired for work, getting to and from work and interacting with others in a work setting, Ms. Delaney would not be able to perform any purposeful activity on a work schedule. I would consider it fraudulent to represent to any potential employer that Ms. Delaney could be a productive employee.

(Tr. 435.) Dr. Gandler also explained that the fibromyalgia drugs currently on the market are largely ineffective and that Claimant does not wish to take them for fear they will aggravate her hepatitis C.

On February 20, 2009, Dr. Gandler filled out a "Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment" in which he characterized Claimant as incapable of performing light or sedentary work on a regular and continuing basis, even if she were permitted to alternate between sitting and standing. (Tr. 438-39.) He characterized the limitation in her ability to maintain attention and concentration as moderately severe; the limitation in her ability to perform activities on a schedule as severe; and the limitation in her ability to complete a normal workday as severe. (Tr. 439.)

II.    Hearing Before ALJ Evans

Claimant testified that she suffered from Hepatitis C and described the functional limitations that it caused. She stated that it felt like a "high fever" and caused constant pain, acutely low energy, and nausea. (Tr. 40.) She also stated that the suffered from joint pain in her wrists, neck, and upper and lower back. (Tr. 41.) Claimant testified that her ribs had a tendency to become dislocated and so she frequently has to see a chiropractor to relocate them. *Id.* This condition is a result of an accident Claimant sustained while driving a truck professionally. (Tr. 41-42.) Claimant further testified that her knees were weak and, for the first time this year, had given out such that she fell to the ground. (Tr. 42.) As a result of shoulder surgery, Claimant stated that she had problems with her right hand, causing her to occasionally drop things. *Id.* She testified that she has high blood pressure and suffers daily heart palpitations

Claimant testified that her eyes began "hemorrhaging about four years ago[,]" meaning that her eyes suddenly fill up with blood. (Tr. 45-46.) This occurs as a result of overuse, often after reading or using a computer. She can use a computer for approximately twenty minutes at a time. (Tr. 48.) As to mobility, Claimant stated that she could walk around a block before needing to rest and that she could lift approximately fifteen pounds with her left arm only. (Tr. 47.)

Claimant testified that at age seventeen she contracted hepatits C and, as a result, has never been able to work full-time. (Tr. 49.)

Dr. Duckler, the medical examiner who reviewed Claimant's file, testified Claimant did not meet a listing and that he could not corroborate Dr. Dover's conclusions because the record before him lacked objective findings upon which he could base his corroboration. The ALJ requested a neuropsychological examination of Claimant to be sent to Dr. Duckler, at which time the ALJ would

reconvene a supplemental hearing to address the additional evidence.[1]

III.    Hearing Before ALJ Montano

At hearing, Dr. Duckler again testified that Claimant did not meet a listing.  (Tr. 24.)

Regarding Hepatitis C, he testified that while Claimant does suffer from Hepatitis C with an elevated

viral load, tests show that she has normal liver function and a normal liver scan.  *Id.*  Dr. Duckler

also identified fibromyalgia as a severe impairment, but stated that it did not cause Claimant any

additional functional limitations.  (Tr. 25.)  Dr. Duckler testified that he did not disagree with Dr.

Dover's opinion and that he was "sure Dr. Dover [was] giving [the court] the best opinion as to the

Claimant's disability[,]" but that, under Social Security regulations, he was unable to conclude that

Claimant met a listing.  (Tr. 25-26.)

Richard Keough, a vocational expert ("the VE"), also testified at hearing.  The ALJ presented

him with the following hypothetical:

> Assume the Claimant were able to perform light work, that would mean occasional
> lifting 20 pounds, frequently 10, stand or walk about six hours in an eight-hour
> workday, only occasional climbing, occasional stooping, never climbing ladders,
> ropes, or scaffolds, would the Claimant be able to do her past work?

(Tr. 30.)  The VE testified that, under the hypothetical, Claimant would be capable of performing

past relevant work.  (Tr. 31.)

Claimant testified that she "[had] to take a nap every day[,]" for at least two hours in the

afternoon and that she became very tired because of the pain caused by a high viral load.  (Tr. 33.)

She stated that she typically engages in short bursts of activity because of her fatigue.  *Id.*

---

[1] The court will not reproduce the testimony of the VE from the initial hearing because the
hypothetical given by the ALJ was based on a different evidentiary record than the hypothetical given
at the subsequent hearing.

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated Claimant's disability, as required.  *See* 20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

I.    Steps One and Two

At Step One, the ALJ concluded that Claimant had not engaged in any substantial gainful activity since the onset of her alleged disability.  (Tr. 10.)  At Step Two, the ALJ determined that Claimant has the severe impairments of hepatits C and fibromyalgia.  (Tr. 10.)  The ALJ's specific findings as to each impairment are detailed below.

A.    *Hepatitis C*

The ALJ cited the testimony of Dr. Duckler, who stated that Claimant's hepatitis C was not sufficiently severe to meet a listing and that Claimant had worked for years with hepatitis C and there was no evidence that her condition had worsened.  (Tr. 11.)  The ALJ noted that, despite her condition, Claimant's liver function was normal.  The ALJ stated that there was not medical evidence to support her claim that hepatitis C causes her chronic nausea.

B.    *Fibromyalgia*

The ALJ noted that Claimant's fibromyalgia did not meet a listing and that "[n]o physician has opined that her impairments are medically equal to a listed impairment."  (Tr. 11.)  The ALJ noted that Claimant's pain was exacerbated by activity, and that chiropractic care had a salutary effect.  The ALJ wrote:  "There is no evidence the claimant ever pursued specific treatment for fibromyalgia or an orthopedic consultation.  Her lack of interest in pursuing recommended treatment is not consistent with her allegations of debilitating pain."  (Tr. 12.)

II.    <u>Step Three</u>

At Step Three, the ALJ determined that Claimant's impairments do not meet or medically equal a listing as set forth in the regulations, specifically the listings at sections 5.05 and 1.04. The ALJ relied on the testimony of Dr. Duckler that Claimant's hepatitis C was not sufficiently severe, noting that she had suffered from hepatitis C for many years and been able to work during that time. The ALJ simply stated that Claimant's fibromyalgia did not meet the listing and that no doctor had stated that Claimant's impairments met or medically equaled a listed impairment. (Tr. 11.)

III.    <u>Claimant's RFC</u>

The ALJ concluded that Claimant has the RFC "to perform the full range of light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs and cannot climb ladders, ropes or scaffolds. She is limited to occasional stooping." (Tr. 11.)

IV.    <u>Step Four</u>

At Step Four, the ALJ concluded that Claimant was "capable of performing past relevant work as an apartment manager, dispatcher, storage rental clerk and cashier clerk." (Tr. 14.)

V.    <u>Step Five</u>

The ALJ did not reach the Step Five inquiry after finding that Claimant could perform past relevant work at Step Four.

*Discussion*

Claimant argues that the ALJ's opinion was in error on four grounds. First, the ALJ improperly rejected the opinions of Claimant's treating and examining physicians. Second, the ALJ improperly rejected Claimant's testimony. Third, the ALJ improperly rejected lay witness testimony. And, fourth, the ALJ's hypothetical failed to set out all of Claimant's limitations. The court will

address each argument in turn.

I.    Opinions of Claimant's Treating and Examining Physicians

"There are three types of medical opinions in social security cases:  those from treating physicians, examining physicians, and non-examining physicians."  *Valentine v. Commissioner Social Security Administration*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  In general, the opinion of a treating physician is entitled to controlling weight if well supported and consistent with underlying evidence.  "[A]n ALJ may not reject treating physicians' opinions unless he 'makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"  *Smolen v. Chater*, 80 F.3d 1273, 1285 (1996) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  Where the opinion is uncontroverted, the ALJ must give clear and convincing reasons to reject the opinion of the treating physician.  *Id.*

The conclusions of examining physicians are given greater weight than those of non-examining physicians.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).  Where the examining physician's opinion is not contradicted, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  *Lester*, 81 F.3d at 830 (quoting *Pitzer*, 908 F.2d at 506).

A.    *Dr. Dover*

Claimant argues that the ALJ improperly rejected the conclusions of  Dr. Dover, a treating physician.  The Commissioner responds that the ALJ properly discounted Dr. Dover's testimony as inconsistent with the conclusions of the medical examiner and those of an examining psychologist.

In 2006, Dr. Dover stated that Claimant would likely not be capable of working at any point

in the future.  Dr. Dover also concluded, in 2008, that Claimant was unable to perform light or sedentary work, even where there was an option to sit or stand and, thus, Claimant was not employable.  The ALJ rejected this testimony, in part, because it was inconsistent with the testimony of Dr. Duckler, the medical examiner who testified at Claimant's hearing.  Dr. Duckler stated that, based on the evidentiary record before him, there was an insufficient objective basis upon which to conclude that Claimant met a listing with regard to either hepatitis C or fibromyalgia.  Claimant argues that Dr. Duckler's opinion does not undermine Dr. Dover's conclusions because, as a non-examining physician his opinion carries less weight than that of Dr. Dover, a treating physician, and because he merely testified that he could not personally corroborate Dr. Dover's conclusions based on the record evidence before him.

The hearing testimony of Dr. Duckler states that, although he believes that Dr. Dover was giving his best opinion to the court, he was not in a position to corroborate Dr. Dover's findings based on the underlying medical record.  Dr. Duckler also testified that Claimant's hepatitis C did not meet a listing, under the applicable regulations.  He also noted that Claimant, who has suffered from hepatitis C since the age of seventeen, had not been prevented from gainful employment in past years.  Dr. Duckler further testified that the fact that Claimant carried an extremely high viral load was not conclusive of any additional limitation, but merely confirmed that she does, in fact, have hepatitis C.  Regarding fibromyalgia, Dr. Duckler stated that the objective evidence before him did not support a finding that Claimant suffered additional functional limitations due to fibromyalgia.

The court agrees with Claimant that Dr. Duckler's testimony does not undermine Dr. Dover's conclusions.  First, Dr. Duckler was clear that while he could not personally validate Dr. Dover's conclusions based on the record before him, he was not suggesting that Dr. Dover's conclusions

were flawed or deficient.  This is qualitatively different from testimony that Dr. Dover's findings were wrong.  Second, as a non-examining physician, Dr. Duckler's opinion carries less weight than Dr. Dover's opinion.  Third, the court notes that Dr. Ducker's testimony does not speak to the ultimate question of disability, but rather addressed the applicability of the listings to Claimant's condition.  Thus, Dr. Duckler's testimony has limited applicability.

The ALJ also discounted Dr. Dover's observation that Claimant's impairments caused depression in Claimant as outside of his field of expertise and inconsistent with the opinion of Dr. Adler, an examining psychologist.  Dr. Adler concluded that Claimant was not mentally impaired to a significant degree, though she was limited in her ability to interact appropriately with others and was somewhat hostile and defensive.  The Commissioner argues that the ALJ appropriately gave Dr. Adler's opinion more weight because Dr. Dover's opinion was conclusory and unsupported by record evidence.

Even if the court agreed that Dr. Dover's observation about Claimant's mental state deserves little weight because Dr. Dover lacks expertise and is contradicted on this point by Dr. Adler, such a finding would be immaterial.  Claimant does not allege a mental impairment and so this conclusion has no bearing on the disability determination.  Furthermore, the court does not consider the alleged inconsistency between the two doctors sufficient to justify a rejection of Dr. Dover's medical findings in his own area of expertise.  Dr. Dover's conclusion as to Claimant's mental state is not central to his analysis of her condition and resulting functional limitations.  Without any evidence that Dr. Dover's observation was objectively wrong, the ALJ had no basis upon which to disregard the balance of Dr. Dover's conclusions due to an alleged inconsistency with the conclusion of Dr. Adler.  Accordingly, while the court does not credit Dr. Dover's conclusion that Claimant suffers

from depression, it does not reject the balance of his testimony.

Claimant argues that the ALJ improperly rejected Dr. Dover's opinion based on a lack of objective evidence of fibromyalgia. The Commissioner responds that the ALJ did not require objective evidence that Claimant had fibromyalgia, but that the absence of such evidence informed the amount of weight given Dr. Dover's findings. In fact, the ALJ rejected Dr. Dover's finding that Claimant needed to frequently rest as not supported by objective evidence. The ALJ cited diagnostic tests that revealed normal liver function and a normal abdominal ultrasound. The court disagrees that Claimant's limitations are unsupported by the evidentiary record. Claimant's self-report states that she must take breaks when engaging in most activities and must also rest for two or three hours each afternoon. Her step-father stated that Claimant is very limited in her ability to engage in activities and described the limitations posed by Claimant's impairments in great detail. Dr. Dover repeatedly described Claimant's limitations arising from fatigue and pain. Dr. Dover also filled out a form provided by SSA and characterized her limitations as moderately severe to severe and stated that she could not perform sedentary work. He wrote that she cannot perform sustained activity and must rest continuously. In 2006, Dr. Gandler diagnosed Claimant with fibromyalgia. Dr. Gandler characterized Claimant as profoundly limited by fibromyalgia in that she must constantly shift position, can stand and sit only for short periods of time, has difficulty carrying, lifting, and otherwise using her hands, and is very limited in use of her eyes for reading or similar activities. He concluded that Claimant was incapable of being a "productive employee." (Tr. 435.) Further, Dr. Gandler explained Claimant's decision not to treat her fibromyalgia with medication.

Based on the above, the court finds that substantial objective evidence in the evidentiary record supports Claimant's diagnosis of fibromyalgia and her need for frequent rest. The ALJ was

not justified in rejecting Dr. Dover's opinion on this basis.

The ALJ wrote:  "Dr. Dover's opinion is given little weight inasmuch as it is unsupported by any objective findings and is inconsistent with the testimony of the medical expert who reviewed the entire record."  (Tr. 13.)  However, as above, Dr. Dover's testimony is not inconsistent with Dr. Duckler's testimony but, rather, Dr. Duckler declined to corroborate Dr. Dover's conclusions based on the record before him.  Furthermore, Dr. Duckler is an examining physician and, where there is no actual conflict, an ALJ must give clear and convincing reasons to reject the conclusions of a treating physician.  The ALJ has failed to do so.

> B.     *Other Source Opinions*

The Code of Federal Regulations ("CFR") distinguishes between opinions from acceptable medical sources and those from other sources.  According to the regulations, licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are acceptable medical sources.  20 CFR § 416.913(a).  The ALJ is also permitted to consider the opinions of other sources, where other sources include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.  20 CFR § 416.1513(a).  However, "[t]he ALJ is free to reject the testimony of an 'other source[]' by furnishing reasons germane to that particular witness." *Bowser v. Comm'r of Soc. Sec.*, No. 03-16066, 2005 U.S. App. LEXIS, at *17 (9th Cir. Feb. 7, 2005) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  The opinions of Dr. Abshier, a naturopath, and Dr. Beeson, a chiropractor, qualify as "other source" opinions and, thus, may be rejected for germane reasons.

The ALJ gave the opinion of Dr. Abshier little weight because it did not describe functional

limitations, was conclusory, and was unsupported by the record as a whole. Furthermore, the Commissioner argues, Dr. Abshier's letter submitted to vocational rehab is merely a reiteration of Claimant's complaints and is unsupported by objective medical evidence. The court agrees that Dr. Abshier's treatment notes are entitled to little weight as objective evidence of medical impairments. Claimant argues that the notes indicate the degree to which Claimant suffered from a variable energy level, which evidence is consistent with the opinions of other medical sources and, thus, should not be discounted. The court concludes that the notes do reveal the extent to which Claimant sought treatment, albeit from a nontraditional source. Beyond that, the court is in agreement with the Commissioner and affords them little weight.

The ALJ also gave little weight to the opinion of Dr. Beeson, Claimant's chiropractor. The Commissioner argues that the ALJ properly rejected the opinion of Dr. Beeson because the evaluation took place sixteen months prior to Claimant's alleged onset date and is thus not indicative of the functional limitations caused by her disability. The Commissioner further argues that the court cannot infer that Claimant's condition at the time of the hearing was as bad or worse than it was at the time of Dr. Beeson's evaluation. Claimant argues that this rejection was improper because Dr. Beeson's opinion was consistent with the evidentiary record and, thus, the ALJ had no reason to reject his Dr. Beeson's findings. Claimant also argues that the date of the evaluation, occurring prior to the alleged disability onset date, is not relevant because Claimant seeks SSI benefits and has never been able to sustain full-time work in her adult life.

The court need not decide whether Dr. Beeson's testimony is properly admitted because, to the extent that his testimony is consistent with the evidentiary record, it is merely cumulative of the opinions of accepted medical sources and, to the extent it is inconsistent with those sources, it does

not outweigh those sources to which the court must, and does, give substantially greater weight. Thus, the admission of Dr. Beeson's testimony is irrelevant to disposition of this matter and need not be addressed further.

C.    Dr. Gandler

Claimant sought review by the Appeals Council of the ALJ's determination of non-disability at which time Claimant submitted a report by Dr. Gandler, in the form of a letter and a completed questionnaire.  Claimant argues that the Appeals Council improperly rejected the supplemental evidence submitted by Dr. Gandler.  The Commissioner argues that this evidence is not properly before the court because, although it can consider the evidence in evaluating the ALJ's decision, it may not review the decision of the Appeals Council to deny review in light of that evidence.  The Commissioner further argues that Claimant does not meet the standard for admission of new evidence, namely that the evidence be material and the delay in its admission based on good cause.

"The Social Security Act allows [the court] to order the Secretary to consider additional evidence, 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (quoting 42 U.S.C. § 405(g) (1982)).  New evidence is material where it "bear[s] directly and substantially on the matter in dispute." *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984) (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)).  Good cause is shown where the claimant "demonstrate[s] that the new evidence was unavailable earlier." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001) (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).  The good cause requirement is "liberally applied" where the consideration of new evidence will not prejudice the Commissioner. *Burton*, 724 F.2d at 1418-19.

Furthermore, it has been held sufficient to justify the requirement of good cause where the evidence was not available at the time of the administrative hearing. *Id.* (citing *Ward*, 686 F.2d at 764). Even so, good cause is not established where a claimant "merely obtain[s] a more favorable report once his or her claim has been denied." *Mayes*, 276 F.3d at 463.

Claimant contends that the Ninth Circuit's decision in *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993), stands for the proposition that the Appeals Council's failure to remand after considering additional evidence demonstrates that the Commissioner considers the record complete and, thus, should remand for an award of benefits. The Commissioner disputes this characterization of *Ramirez*, arguing that the court may not review the "Appeals Council's consideration of that evidence in denying review." (Def.'s Br. 11.)

In *Ramirez*, the Ninth Circuit reviewed the ALJ's decision based on the evidentiary record at the time of the administrative hearing as well as the additional evidence submitted to the Appeals Council. The court noted that the Commissioner "d[id] not contend that the Appeals Council should not have considered the additional report submitted after the hearing, or that [the Ninth Circuit] should not [have] considered it on appeal." *Id.* at 1451-52. The Ninth Circuit noted further that, in declining to review the ALJ's decision, the Appeals Council considered the record as a whole, including the evidence newly submitted to the Appeals Council.

Here, the relevant inquiries are whether the newly submitted evidence is material and whether the delay in its submission is excused by good cause.[2] First, the court finds that Dr. Gandler's supplemental report bears directly and substantially on the question of Claimant's disability. Dr.

---

[2] Whether admission of this evidence renders the record "complete" and mandates remand for an award of benefits will be taken up separately, below.

Gandler described, with specificity, the functional limitations faced by Claimant and concluded that Claimant was incapable of full-time, gainful employment. Second, because Dr. Gandler's supplemental report is merely a clarification and expansion of his earlier testimony, its submission was not prejudicial to the Commissioner. The report's conclusions are consistent with evidence in the record at the time of the administrative hearing and are not more favorable than those presented to the ALJ. In light of the liberal interpretation of the good cause requirement, the court concludes that Dr. Gandler's supplemental report is properly submitted new evidence. Dr. Gandler's findings as to the functional limitations faced by Claimant, as well as his conclusion that Claimant is not employable are thus relevant to the ultimate disability determination.

II.    Claimant's Testimony

"Once a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (internal quotation marks omitted). If the ALJ finds the subjective complaints less than credible, the ALJ must make specific findings that support that conclusion. "[T]he findings 'must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony." *Id.* at 856-57 (quoting *Bunnell*, 947 F.2d at 345). In the absence of evidence that the claimant is malingering, the ALJ must give "clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Id.* at 857 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

Here, the ALJ acknowledged that "the claimant's medically determinable impairments could

reasonably be expected to cause the alleged symptoms[,]" but concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 12.) Regarding hepatitis C, the ALJ noted that despite suffering from this condition for many years, liver testing shows that Claimant's liver has normal function and, furthermore, that Claimant worked for years with this condition. The ALJ also stated that the record lacked objective evidence that Claimant's condition, hepatitis C, resulted in chronic fatigue and nausea. The ALJ then noted that Claimant's complaints of bleeding eyes and heart problems are unsupported by the record and, thus, undermine her credibility.

The ALJ found that the RFC accounted for the limitations posed by both hepatitis C and fibromyalgia. Although the ALJ "accepted" the fibromyalgia diagnosis, she cited record evidence that Claimant "exhibited good grip strength[,]" chose not to take medication for fibromyalgia, and did not see an orthopedist, despite Dr. Gandler's recommendation that she do so. (Tr. 12.) In his report, Dr. Gandler stated that Claimant's "grip strength is moderately good and equal bilaterally." (Tr. 239.) He went on to state that "on the right gripping produces pain up to the elbow." *Id.* Claimant testified that she, at times, suddenly dropped objects from her right hand. She did not testify that she could not grip objects the majority of the time. Furthermore, Dr. Gandler's report provides objective support for this impairment. Rather than undermine her claims as to the severity of her fibromyalgia, this evidence supports it.

The ALJ also concluded that, despite the fact that the record supported some exertional limitations arising from fibromyalgia, Claimant's "lack of interest in pursuing recommended treatment is not consistent with her allegations of debilitating pain." (Tr. 12.) Claimant argues, in

response, that she did not begin taking medication for fibromyalgia because of her concern that it would exacerbate the effects of the hepatitis C and place too much additional stress on her liver. This, she argues, is why she has sought out nontraditional treatment for fibromyalgia.

The ALJ did not conclude that Claimant was malingering and, thus, the ALJ must give clear and convincing reasons to reject Claimant's testimony. The ALJ gives two reasons for rejecting Claimant's testimony: (1) Claimant cites impairments that are unsupported by the evidentiary record and (2) Claimant pursued a nontraditional course of treatment. The court does not find the ALJ's reasons clear or convincing. First, the fact that Claimant reports heart palpitations but has not been diagnosed with a heart condition does not clearly and convincingly undermine her credibility, much as her report that her right-hand grip fails her occasionally but demonstrated a "moderately good" grip strength during a medical evaluation fails to clearly and convincingly undermine her credibility. Second, Claimant has provided a strong rationale for avoiding traditional fibromyalgia medications in that she does not want to further damage her liver. Instead, Claimant actively pursued a course of nontraditional treatment to help deal with the pain and fatigue associated with fibromyalgia.

Finally, the ALJ argued that Claimant's RFC adequately captured the limitations imposed by her chronic pain and fatigue. Claimant argues that the RFC does not account for the variability of her energy level or inconsistency of her pain and, furthermore, the ALJ did not identify any record evidence which undermined Claimant's assertion that she cannot stand, sit, and walk for a total of eight hours at a time. Claimant admits that she can engage in activity sporadically, but maintains that she cannot sustain activity for an extended period. The court is not persuaded by the ALJ's reasoning that Claimant's testimony should be consistent with the ALJ's own RFC. Rather, the RFC should be consistent with the underlying evidentiary record, including Claimant's testimony, to the

extent it is not properly rejected as not credible.  Here, the ALJ did not otherwise give clear and convincing reasons to reject Claimant's testimony, and Claimant's failure to testify consistent with the ALJ's own RFC also fails to provide such a reason.

III.    Lay Witness Testimony

It is well established that, "[i]f the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  It is appropriate to reject the testimony of a lay witness where it is inconsistent with medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  That said,

> lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account.  Such testimony is competent evidence and cannot be disregarded without comment. . . .  Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. . . .
>
> The ALJ need not discuss lay witness testimony that pertains to whether or not an impairment exists. . . .  However, once an impairment has been established by medical evidence, the extent of the diagnosed impairment may be testified to by the lay witnesses.

*Yates v. Astrue*, 1:08cv01466 GSA, 2009 U.S. Dist. LEXIS 113090, 22-23 (E.D. Cal. Nov. 20, 2009) (internal citations omitted).

Brehm is Claimant's step-father and, at the time he filled out his third-party function report on Claimant's behalf, he lived with Claimant and was in a good position to observe her daily activities.  The ALJ first characterized the bulk of Brehm's report as "consistent with a capacity for light exertion tasks." (Tr. 14.)  This included statements that Claimant does most of the household chores, shops two to three times a week, uses a computer and does crafts, and cannot lift more than twenty pounds.  However, the ALJ felt that these statements were inconsistent with Brehm's

subsequent testimony that Claimant "had difficulty walking more than a block, using her hands, sitting, and standing." (Tr. 14.) In conclusion, the ALJ wrote: "While the claimant may rest during the day, there is no evidence that this is a medical necessity." (Tr. 14.) For this reason, the ALJ gave Brehm's report little weight.

Claimant argues that the ALJ failed to identify actual inconsistencies and ignored evidence tending to show that Claimant's need to rest throughout the day was a necessity. The court agrees that the ALJ's reasons are insufficient to meet even the low bar required to reject lay testimony. First, the ALJ merely states that Brehm's testimony is "not entirely consistent," which does not amount to a wholesale rejection of that evidence. Further, the ALJ does not identify which portions of the testimony are rejected. Second, the ALJ's comment that there is no evidence in the record that Claimant's need to rest is a "medical necessity" is irrelevant to the weight given Brehm's testimony. The existence of objective medical data of Claimant's need to rest is not an evidentiary prerequisite to Brehm's personal observations regarding Claimant. Accordingly, the ALJ erred in rejecting Brehm's testimony and the court credits it as true.

IV.    Adequacy of the Hypothetical

An ALJ's vocational hypothetical was proper where it "contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). Claimant argues that the ALJ's vocational hypothetical as presented to the vocational expert was inadequate because it failed to set forth all of Claimant's functional limitations. Specifically, Claimant argues that the hypothetical did not include limitations detailed by the lay

witness testimony of Brehm and her treating physicians, Dr. Dover, Dr. Abshier, and Dr. Beeson. Accordingly, Claimant argues, the ALJ's hypothetical was necessarily inadequate. The Commissioner responds that, where opinion evidence as to a claimant's limitations is properly discounted, the ALJ need not include those limitations in the hypothetical.

Based on the above analysis and the ALJ's improper rejection of the testimony of Dr. Dover, Brehm, and Claimant herself, the hypothetical was necessarily inadequate to capture Claimant's functional limitations. Accordingly, the hypothetical was invalid and the court may not rely on it.

V.    Remand

The court concludes that, due to the ALJ's errors in rejecting the testimony of appropriate and credible sources, the ALJ's decision must be reversed. The court must now consider whether the matter should be remanded for further proceedings or for an award of benefits. The decision to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Here, the court finds that the evidentiary record is fully developed and, when properly credited, is not sufficient to support the Commissioner's decision. Two of Claimant's treating physicians stated conclusively that Claimant is not capable of gainful employment. Dr. Gandler detailed the severe functional limitations that Claimant experiences as a result of hepatitis C and fibromyalgia. Claimant and her father, whose testimony was previously rejected by the ALJ, also

detailed the extent of her functional limitations.  Based on this evidence, the court concludes that

further proceedings are not necessary as the existing record already establishes that Claimant is

disabled.  Accordingly, the court remands this matter for an immediate award of benefits.

*Conclusion*

For the reasons stated, the Commissioner's decision is REVERSED and REMANDED FOR

AN AWARD OF BENEFITS.

DATED this 28th day of December, 2010.


        _____/s/ John V. Acosta_____
            JOHN V. ACOSTA
        United States Magistrate Judge